IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ANTONIO RIVERA, #352-432 | * | |
| Plaintiff | * | |
| v | * | Civil Action No. DKC-17-666 |
| WEXFORD HEALTH SOURCES, INC., | * | |
| PEGGY MAHLER, Nurse Practitioner, | | |
| RICHARD GRAHAM, JR., Warden, and | * | |
| DAYENA CORCORAN, Commissioner of | | |
|   Correction, | * | |
| *All Defendants are Sued for Actions Under* | | |
|   *Color of Law in Their Individual and* | * | |
|   *Official Capacities* | | |
| | * | |
| Defendants | | |

**MEMORANDUM OPINION**

Antonio Rivera, a Maryland prisoner housed at Western Correctional Institution ("WCI"), seeks money damages and declaratory relief based on the denial of proper medical treatment for a meniscus tear of the left knee first diagnosed in late 2016. ECF No. 1, pp. 1-2, 19.[1] In a December 8, 2017, Memorandum Opinion, this Court granted summary judgment to the Commissioner of Correction and WCI's Warden, finding they had no supervisory authority over the medical employees alleged to have caused the injury. ECF No. 30, p. 9. Consideration of the merits of the medical Defendants' motion to dismiss or for summary judgment was held in abeyance, subject to renewal after the outcome of a pending surgical consultation.[2] ECF No. 30, p. 10; ECF No. 31, ¶ 3.

---

[1] This opinion cites to pagination assigned by the court's electronic docketing system.

[2] The motion to strike Rivera's surreply (ECF No. 29) also was unresolved. A surreply is permitted when the moving party would be unable to contest any matters raised by the opposing parties in their reply for the first time. *See Lewis v. Rumsfeld*, 154 F. Supp.2d 56, 61 (D. D.C.

In response to Court order, the medical Defendants, in addition to their initial summary judgment motion (ECF No. 22), have provided two status reports with exhibits, as supplemented, outlining the additional treatment provided to Rivera. ECF Nos. 33, 35 and 36. Rivera has opposed the initial summary judgment motion (ECF No. 26), and has submitted his own status report (ECF No. 32) and a second response in opposition to the medical Defendants' summary judgment motions (ECF No. 34). After review of the papers filed, the Court finds a hearing on the pending matters unnecessary. *See* Local Rule 105.6 (D. Md. 2016). For the reasons outlined below, the medical Defendants' motion to dismiss or for summary judgment (ECF No. 22), as supplemented (ECF Nos. 33, 35 and 36) will be granted.

## Analysis

**Wexford Health Sources, Inc.**

Wexford Health Sources, Inc., is a private corporation contracted by the State of Maryland to provide medical services to inmates in the State's custody, and is entitled to dismissal based on the record outlined herein. A private corporation is not liable under § 1983 for actions allegedly committed by its employees when such liability is predicated solely upon a theory of respondeat superior. *See Austin v. Paramount Parks, Inc.,* 195 F.3d 715, 727-28 (4th Cir. 1999); *Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982); *Clark v. Maryland Dep't of Public Safety and Correctional Services,* 316 Fed. Appx. 279, 282 (4th Cir. 2009); *see generally Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983). The complaint presents no discernible claim directly involving Wexford

---

2001). Unless otherwise ordered, a surreply is not permitted. *See* Local Rule 105.2(a) (D. Md. 2016). Defendants have not raised new matters for the first time in their reply. Thus, the filing of a surreply in this case will not be permitted, and Defendants' motion to strike will be granted.

other than its role as the medical services provider, and the complaint against it is therefore dismissed.

**Peggy Mahler, Nurse Practitioner**

As noted in the previous Memorandum Opinion (ECF No. 30), the remaining aspect of the pending dispositive motion relies on matters outside the pleadings and is therefore considered a motion for summary judgment. Fed. R. Civ. P. 12(d). Summary Judgment is governed by Fed. R. Civ. P. 56(a), which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original).

Federal Rule of Civil Procedure 56(d) provides that:

If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts to justify its opposition, the court may:

(1) Defer considering the motion or deny it;
(2) Allow time to obtain affidavits or declarations or to take discovery; or
(3) Issue any other appropriate order.

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours and Co. v. Kolon Industries, Inc.*, 637 F.3d 435, 448-49. The party opposing summary judgment "'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to

3

oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)). Notably, "'Rule 56(d) affidavits cannot simply demand discovery for the sake of discovery.'" *Hamilton v. Mayor & City Council of Baltimore*, 807 F. Supp. 2d 331, 342 (D. Md. 2011) (quoting *Young v. UPS*, No. DKC-08-2586, 2011 WL 665321, at *20, 2011 U.S. Dist. LEXIS 14266, at *62 (D. Md. Feb. 14, 2011)).

In his second opposition response, Rivera for the first time states that he has sought additional medical records, both from prison sources and in some instances from those who are not named in this case, to show orthopedic recommendations made by other specialists. He also indicates that Defendants describe his version of events as "inaccurate," and that additional, unspecified medical records are needed to demonstrate that his version of the timeline regarding medical treatment is true. ECF No. 34, pp. 2-3.

The parties do not dispute that Rivera had ongoing problems with knee pain that existed prior to his transfer to WCI, nor do they dispute that beginning in April of 2015, while housed at Roxbury Correctional Institution ("RCI"), he reported recurrent knee pain. ECF No. 9-4, p. 32. Treatment that may have been considered prior to Rivera's incarceration is not at issue; rather, the adequacy of treatment rendered by prison medical care providers subsequent to Rivera's incarceration at WCI is subject to review. Rivera does not dispute the accuracy of the record

submissions provided by the medical Defendants, only that his version of when various promises of treatment were made differs from those noted in those records. The court will consider those differences in its determination of the case, but declines to initiate discovery at this juncture based on Rivera's concerns.

On April 25, 2015, Rivera was evaluated by WCI medical personnel following his transfer from RCI. ECF No. 9-4, pp. 60-62. He requested a left knee brace. *Id*. An examination indicated no acute disease in the knee; nonetheless, an elastic knee brace was ordered and a Tylenol prescription was renewed. *Id.,* pp. 66-67. An x-ray obtained in May of 2015 showed no evidence of acute fracture, dislocation or subluxation. Knee conditioning exercises were ordered. ECF No. 9-4, pp. 33-36. Rivera again complained of left knee pain on August 4, 2015. ECF No. 22-5 (Affidavit of Ava Joubert, M.D.), ¶ 4. He was given Ibuprofen and provided an Ace wrap and crutches for one week. *Id.* He indicated he injured the knee playing soccer six years before and that his pain was aggravated by walking and alleviated with rest. *Id.* He exhibited a decreased range of motion and strength in the left knee and had an uneven gait. Rivera was prescribed a corticosteroid and ibuprofen and ordered to refrain from work or play for a week, before returning to light duty. X-rays of the left knee and ankle were ordered. *Id.*

In January of 2016, Rivera again reported left knee pain attributed to a sports injury the previous year. *Id.,* ¶ 5. Additional pain medications were prescribed. *Id.*

On May 4, 2016, Rivera was referred for physical therapy and his medication was changed. *Id.,* pp. 63-65. In June of 2016, Rivera reported the pain medications did not work. Another pain medication was prescribed and Rivera was referred to the onsite surgeon for a steroid injection to the left knee. ECF No. 22-5, ¶ 7.

During August and September, 2016, Rivera was given a knee injection, provided with a knee sleeve, and approved for physical therapy. ECF No. 9-4, pp. 68-77. Additionally, Rivera was told to lose weight and perform knee exercises. ECF No. 22-5, ¶ 7. On August 25, 2016, he complained the knee was unstable and giving out, and the steroid injection provided no relief. ECF No. 22-5, ¶ 8. On September 15, 2016, he received a physical therapy evaluation with goals to increase quad strength and to establish a self-management program. ECF No. 9-4, p. 78. Rivera was provided continued physical therapy sessions through December, 2016. *Id*., pp. 78-101. Pain medications were changed. ECF No. 22-5, ¶ 9. On December 7, 2016, he admitted he was not doing his follow-up exercises. *Id.,* ¶ 10; ECF No. 9-4, p. 92. A consult for a telemed conference with orthopedics was denied; instead, a new knee brace was provided. Notwithstanding Rivera's statement to the contrary (ECF No. 1 at 7), a consult was not made in December of 2016 ordering an MRI. ECF No. 22-5, ¶ 10.

The January 5, 2017, medical notes indicate Rivera had completed physical therapy for his knee on December 24, 2016, and was to continue to do exercises taught in physical therapy. ECF No. 9-4*,* p. 102. He declined another steroid injection. *Id*., p. 102-106. Rivera was advised that he should not stay on Tylenol #3[3] for a long period of time, and he should lose weight, refrain from jumping/running or exercise that would cause knee pain and follow up with a provider in one month for x-ray results and to see how he does on decreased Tylenol #3 dosing. *Id.,* p. 102. Defendant Mahler, a nurse practitioner, wanted to wean him down to a lesser dose of Tylenol #3. A left knee elastic brace and a knee x-ray were ordered. *Id.*. On January 9, 2017, an x-ray showed no evidence of an acute fracture, dislocation or subluxation, and no acute osseous

---

[3] Tylenol #3 contains an opioid pain reliever (codeine) as well as a non-opioid pain reliever (acetaminophen). *See* https://www.webmd.com/drugs/2/drug-3179/tylenol-codeine-3-oral/details (last viewed December 6, 2017).

abnormality. *Id*., p.122. On January 19, 2017, a smaller knee brace was provided. In February, 2017, following his complaint of continued pain and instability causing him to fall, Rivera was approved for a cane, which was provided on March 22, 2017. *Id*., pp. 109, 112-113; ECF No. 22-5, ¶ 13.

On March 31, 2017, Rivera's medication was changed. ECF No. 9-4, p. 114. Dr. Roy Carls, an orthopedist, assessed Rivera as likely having medial and lateral meniscus tears, and possibly an anterior cruciate ligament tear. ECF No. 22-5, ¶ 14. Carls recommended an MRI of the left knee to determine whether arthroscopic surgery was needed. The MRI consult was approved. ECF No. 22-4, p. 2; ECF No. 9-4, pp. 119, 124, 126-128; ECF No. 22-5, ¶ 14. An MRI was scheduled at the Maryland Regional Medical Center on June 16, 2017, but did not occur, because the MRI machine was not available. ECF No. 9-4, p. 130.

A June 23, 2017, MRI indicated Rivera had a horizontal oblique tear at the apex of the posterior horn of the medial meniscus, and a possible meniscal capsular separation. ECF No. 22-5, ¶ 20. During an October 26, 2017 follow-up visit, Carls recommended left knee arthroscopy. ECF No. 33, ¶ 2. The procedure was approved on November 22, 2017. *Id.,* ¶ 4; ECF No. 33-1 at p. 12. Rivera underwent arthroscopic surgery on January 5, 2018. ECF No. 35, ¶ 2. He has been advised to do prescribed exercises and lose weight, and has been scheduled for the on-site orthopedic clinic. *Id.,* ¶ 4.

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) citing *Wilson v. Seiter*, 501 U.S.294, 297 (1991). In order to state an Eighth

Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

> Deliberate indifference is a very high standard – a showing of mere negligence will not meet it. . . . [T]he Constitution is designed to deal with deprivations of rights, not errors in judgments, even though such errors may have unfortunate consequences.... To lower this threshold would thrust federal courts into the daily practices of local police departments.

*Grayson v. Peed*, 195 F.3d 692, 695- 96 (4th Cir. 1999).

Merely providing treatment may not be sufficient under the Eighth Amendment. *See De'lonta*, 708 F.3d 520, 526 (4th Cir. 2013) (holding that, even if defendants "provided [plaintiff] with *some* treatment . . . , it does not follow that [defendants] have necessarily provided *constitutionally adequate* treatment"); *see also Cesal v. Moats*, 851 F.3d 714, 723 (7th Cir. 2017) ("Continuing an ineffective treatment plan . . . may evidence deliberate indifference."); *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990) (recognizing same).

Rivera does not complain that the treatment rendered violated the Eighth Amendment. Instead, his complaints focus on the time it took to obtain the necessary surgery (more than three years). He questions whether that delay will require additional medical intervention, such as knee replacement, in the future. ECF No. 32, pp. 1-2, 3. Rivera reiterates that because of the delay in surgery, he had to endure daily pain in the knee, as well as in his back and hip, caused by his gait abnormality. *Id.,* ¶ III.[4]

Rivera has received constitutionally adequate medical care resulting in surgery for his left knee. At issue, however, is whether such care was afforded following unnecessary delay. Delays in medical treatment violate the Eighth Amendment if a condition is life-threatening. *See*

---

[4] Rivera has not filed additional documents with the court following his surgery.

*Erickson v. Pardus*, 551 US 89, 93 (2007) (delay in treatment and cancellation of treatment for hepatitis C, which may be life-threatening, states claim); *Jennings v. Ottey*, 2015 WL 449431 (D. Md. July 22, 2015) (unreported) (delay during conservative treatment for possible torn meniscus or ACL tear of more than one year, with a brace, injections and surgical consultation during that time, does not violate the Eighth Amendment). Here, WCI medical personnel provided conservative treatment for an old knee injury, beginning in August of 2015, for nine months before referring Rivera to a specialist. That specialist indicated that an MRI was needed to evaluate Rivera's condition, and the MRI was promptly scheduled by prison medical personnel. The scheduled MRI was delayed, but that delay was occasioned not by prison medical personnel, but because the diagnostic equipment was not available on the day of Rivera's appointment. The June, 2017, diagnosis resulted in a follow-up consultation with the outside specialist in October of 2017, and surgery occurred three months later, on January 5, 2018. Rivera's knee problem was treated conservatively, and additional diagnostic testing and referral to a specialist led to surgery within 18 months after he first complained to WCI medical personnel. An Eighth Amendment delay in necessary medical treatment is not shown on the record, and Nurse Mahler, who played a limited role in providing such treatment, is entitled to summary judgment.

## Conclusion

The dismissal of Defendant Wexford is appropriate, and summary judgment will be entered in favor of medical Defendant Peggy Mahler. A separate order follows.

May 30, 2018

/s/
DEBORAH K. CHASANOW
United States District Judge

9